IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Joseph D. Jones, )<br>)<br>Petitioner, )<br>)<br>v.  )<br>)<br>State of South Carolina, )<br>and Attorney General Henry )<br>McMaster, Tim Riley, Warden )<br>of Tyger River Correctional )<br>Institution, )<br>)<br>Respondent. )<br>) | Civil Action No.8:08-1958-RBH-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

The petitioner, a pro se prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the respondent's motion for summary judgment. (Dkt. # 19.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on May 19, 2008.[1] On August 25, 2008, the respondent moved for summary judgment. By order filed August 26, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On September 12, 2008, the petitioner filed a response.

**PROCEDURAL FACTS**

The petitioner is currently a state prisoner housed in the Tyger River Correctional Institution. In May 1999, the petitioner was indicted by the Oconee County Grand Jury for

---

[1]This date reflects the date that the envelope containing this petition was stamped as having been received by the Tyger River Correctional Institution's mailroom. (Compl. Attach.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

assault and battery with intent to kill. He was represented by attorney Mary Alice H. Godfrey. On October 25-29 1999, the petitioner was tried by a jury with the Honorable Alexander S. Macaulay presiding.  The petitioner was convicted as charged and Judge Macaulay sentenced him to twenty years.  The petitioner filed a timely notice of appeal.

On appeal, the petitioner was represented by Appellate Defender Wanda H. Haile. Haile filed a final *Anders* brief raising the following issue:  "The lower court erred in allowing the defense to exercise five peremptory challenges in a discriminatory manner."  The petitioner did not file a pro se brief. On March 12, 2002, the South Carolina Court of Appeals dismissed the petitioner's appeal in *State v. Jones,* Op. No. 02-UP-183. The remittitur was sent down on April 12, 2002.

On June 4, 2002, the petitioner filed an application for post-conviction relief ("PCR") raising the following issues:

> 1)  Ineffective assistance of counsel for failing to obtain an expert on eye witness identification and the effect cocaine may have had on identification;
> 
> 2)  Ineffective assistance of counsel for failing to inquire as to whether the victim and several witnesses testified in exchange for dropping charges against them;
> 
> 3)  Ineffective assistance of counsel for failing to obtain an expert on eye witness identification and the effect alcohol may have had on identification;
> 
>  4) Denial of a fair trial because the jury foreman coerced the other jurors into changing their votes to guilty;
> 
> 5)  Ineffective assistance of counsel for failing to move for a new trial based on after-discovered evidence;
> 
> 6)  Ineffective assistance of counsel for failing to object to the introduction of prior bad acts;
> 
> 7)  Ineffective assistance of counsel for failing to present a coherent argument based on the defense of police fabrication of evidence;

> 8) Failure to have an impartial jury because the jury foreman intimidated the other jurors;

(App. 415-418.)

On December 13, 2004, an evidentiary hearing was held before the Honorable J. Cordell Maddox, Circuit Court Judge. The petitioner was present at the hearing and represented by attorney Derek J. Enderlin. On January 5, 2006, Judge Maddox filed an order denying relief, dated December 30, 2005. (App. 487-500.) The petitioner filed an appeal.

On appeal, he was represented by Appellate Defender Wanda H. Carter. On November 17, 2006, Carter filed a *Johnson* petition seeking a writ of certiorari and raising the following issue: "The PCR Court erred in denying petitioner's argument that improper intra-jury influences and juror misconduct should have resulted in an impeachment of the verdict in the case." (*Johnson* Pet. 2.) On December 14, 2006, the petitioner filed a pro se motion to substitute counsel and remand for Rule 60(b), SCRCP. On December 19, 2006, the petitioner also filed a pro se *Johnson* brief raising the following issues:

> 1) Ineffective assistance of counsel for failing to object to the *Allen* charge;
>
> 2) Unfair trial because of jury bias;
>
> 3) Brady violation;
>
> 4) New trial motion was improperly denied; and
>
> 5) PCR Court failed to address all of the issues raised.

On January 31, 2007, the South Carolina Supreme Court denied the petitioner's motions to substitute counsel and remand. On September 19, 2007, the Court also denied counsel's motion to be relieved and directed that a petition be filed addressing the following issue: Did the PCR judge err in finding trial counsel was not ineffective for failing to call an

3

eyewitness identification expert?  On April 3, 2008, the Supreme Court denied certiorari. The remittitur was sent down on April 21, 2008.

In this habeas action, the petitioner raises the following grounds for relief, quoted verbatim:

> **Ground One**: Petitioner was denied effective assistance of counsel
> **Supporting Facts**: Counsel failed to obtain an expert witness to testify to the effects of cocaine for the possibility of Mis-Identification of the Petition by the victim, when the victim was found to have large amounts of cocaine in his system immediately after the crime and where the victim initially gave a description of his assailant that DID NOT resemble the Petitioner and the victim claimed he was attacked by a Hitchhiker.
>
> **Ground Two:** Petitioner was denied a fair trial.
> **Supporting Facts:** Petitioner was prevented from having an impartial jury, where the jury foreman threatened, intimidated and brow-beat others jury members into changing their votes of not guilty to guilty, against their will and better judgement. At one point in time the jury split into separate groups and were deliberating in separate rooms. The trial judge had to order them to deliberate together. The reason for the separation is clear by the affidavit of William B. Martin, III, a Juror (Exhibit "A"). Mr. Martin states in sum; the jury foreman was intimidated by the Petitioner prior to trial, and, foreman threatened jurors to vote Guilty.
>
> **Ground Three**:  Prosecutorial Misconduct
> **Supporting Facts:**  Petitioner asserts that he has a prior criminal record primarily from the state of California. The record reflects in 1986 a burglary conviction, a failure to appear, and taking of a vehicle without consent conviction. Petitioner contends that the introduction of his prior bad acts that DO NOT show a common scheme, motive or plan to ABWIK was not admissible under our state's law. The introduction of such biased the Court.
>
> **Ground Four**: Brady Violation
> **Supporting Facts:**  In Supplemental to point two:  The State WITHHELD information in violation of Rule 5, as set forth in Brady v. Maryland, that Wesley Canton Smith was a previous police informant who acted on numerous occasions to assist narcotics agents, particularly known, Donnie Frick, and presented this key witness to the jury as a mere bystander,

4

> when in actuality he was an "Agent of the Police" with a vested interest in assisting law enforcement.

(Pet.) In his memorandum attached to the petition, the petitioner also asserts the following grounds for relief:

> 1) Ineffective assistance of counsel because counsel failed to raise an issue at trial about whether the victim and witnesses testified in exchange for having their criminal charges dropped.
>
> 2) Ineffective assistance of counsel because counsel failed to question statements made by witness Kenny Belcher that someone else had told him that he had stabbed the victim.
>
> 3) Ineffective assistance of counsel because counsel failed to cross-examine Dr. N. M. Doromal as to precisely what type and strength of narcotic pain medication the victim was under prior to and during the photo line-up.

(Pet. Attach.)

## **APPLICABLE LAW**

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining

5

whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

**EXHAUSTION**

The respondent asserts that only two claims are not procedurally barred. The undersigned agrees. As discussed below, only issues set forth in Grounds One and Two were raised and ruled upon in the petitioner's PCR proceeding: the juror misconduct issue and trial counsel's failure to call an expert on eyewitness identification.

In Ground Three, the petitioner asserts that the prosecutor committed misconduct in the sentencing phase when he introduced the petitioner's prior criminal record including a 1986 conviction from California. This issue is procedurally barred because there was no objection at the time of sentencing. *State v. Garner,* 403 S.E.2d 631 (S.C. 1991) (holding challenge to sentencing must be raised at trial to preserve the issue for appellate review).

In Ground Four, the petitioner alleges a *Brady* violation. While the petitioner raised this issue in his PCR application, the PCR Court did not rule on it and the petitioner did not file a Rule 59(e) motion seeking a ruling. Therefore, this issue was procedurally defaulted in state court under *Coleman*.

Further, the petitioner has not alleged any cause and prejudice to excuse this default. As previously discussed, it is the petitioner's burden to raise cause and prejudice or actual innocence and a court need not consider cause and prejudice or actual innocence if not asserted by the petitioner. *Burket v. Angelone*, 208 F.3d 172, 183 n. 10 (4th Cir. 2000). Accordingly, these issues are barred from federal habeas review.

In his memorandum, the petitioner asserts that trial counsel was ineffective for failing to impeach the witnesses concerning whether charges against them had been dropped, to question Belcher about the inconsistent statements he made regarding who had stabbed the victim, and to adequately cross-examine Dr. Doromal concerning the effect of the drugs on the victim during the photo line-up. Again, while the petitioner raised these issues in his PCR application, the PCR Court did not rule on them and the petitioner did not file a Rule 59(e) motion seeking a ruling. Therefore, these issues were procedurally defaulted in state court under *Coleman*. Further, the petitioner has not alleged any cause and prejudice to excuse this default. *Burket,* 208 F.3d at 183 n. 10. Accordingly, these issues are barred from federal habeas review.

Accordingly, Grounds Three and Four and those issues raised in the petitioner's memorandum were not properly raised and ruled upon in the petitioner's PCR proceedings or not properly preserved for appellate review and therefore are barred from habeas review. Further, the remaining grounds should be dismissed on the merits as discussed below.

**MERITS**

### Ground One

In Ground One, the petitioner contends that counsel was ineffective in failing to call an expert witness on eyewitness identification. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id*. at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. *Id.* at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in *Strickland,* defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell,* 506 U.S. 364 (1993). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland,* 466 U.S. at 689.

The PCR Court found trial counsel was not ineffective for failing to call an eyewitness identification expert. (App. 498.) The PCR Court noted that trial counsel stated that she chose to focus her defense around the "sloppy" police work and the shifting stories of the victim and his friends. (*Id.*) The PCR Court noted that where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance citing *Whitehead v. State*, 417 S.E.2d 530 (S.C. 1992). (*Id.*) Even assuming deficient performance of trial counsel, the PCR court also found no prejudice. (*Id.*) The PCR Court's decision was not an unreasonable application of *Strickland*.

8

In his deposition, Dr. John C. Brigham, an expert on eyewitness identification, stated that the lighting in the area made any identification testimony suspect and the stress of the situation could also result in a mistaken identification. (Supp. App. II - Brigham's Dep. 9; 21-22.) Dr. Brigham stated that in an unbiased line-up, the officer should state that the perpetrator may or may not be in the line-up. (Supp. App. II - Brigham's Dep. 17.) Here, the victim had testified that he was told to pick out the person from the line-up. (App. 159.) Dr. Brigham admitted however that he had not reviewed the testimony of Officer Gregg Reed regarding the lineup procedure, and that Reed's version sounded much less suggestive than the testimony of the victim. (Supp. App. II- Brigham's Dep. 31-32.) Dr. Brigham also stated that he was not able to make any conclusion about the suggestiveness of the photographic lineup because of the poor quality of the copies he received. The only thing Dr. Brigham's testimony would have really added at trial was that stress and lighting can cause a misidentification and that eyewitnesses in general are considered by experts to be unreliable due to the stress involved in violent criminal incidents.

Importantly, however, the undersigned notes that this is not the typical case regarding the issue of the unreliability of eyewitness testimony.[2] A typical case in which eyewitness expert testimony would be useful is when a witness has identified a suspect who was previously a stranger to him. Here, however, the eyewitnesses were not complete strangers to the petitioner. *See State v. Guloy*, 705 P.2d 1182 (Wash. 1985)(victim knew both his assailants and, thus, there was little chance of misidentification); *State v. Gillard*, 1998 WL 351442 (Ohio App. 5 Dist. 1998)(unpublished)(holding it is doubtful that expert testimony would have been admissible on the issue of eyewitness identification because

---

[2]"The identification of strangers is proverbially untrustworthy. . . ." *United States v. Wade*, 388 U.S. 218, 228 (1967)(internal citations omitted)

9

this is not a case of a stranger identification, under the stress of a traumatic incident, but rather, an identification by a person familiar with appellant.)

The petitioner and several others belonged to the local chapter of the Lost Souls described as "a group of middle income, lower income, blue-collar workers [who] ride bikes . . . and plan trips together." (App. 70; 138.)  The group meets at a clubhouse which is similar to a roughed-in cabin with a bar, restroom, pool table, couches, and televisions. (App. 72.)  On the night of the stabbing, roughly twelve people were present. (App. 99; 112.)  The victim testified that he had never meet the petitioner, but that he had been pointed out to him earlier in the evening from five-ten feet away. (App. 149-150; 169.)

Wesley Smith testified that he had known the petitioner for approximately nine months and had been on a weekend trip with the petitioner and his wife. (App. 73-74; 98.) Smith also testified that he had talked with the defendant on the night of the stabbing. (App. 76.)  Finally, Smith testified that he heard the petitioner accuse the victim of being with the "A.T.F." or the Bureau of Alcohol, Tobacco, and Firearms and saw the petitioner swing at the victim.   (App. 80-81.)

As for Kenny Belcher, he actually testified that he could not identify the petitioner as being the third man. (App. 116; 118; 123-124; 137.)  He testified that he might have met the petitioner once before the night of the stabbing. (App. 110.)  He testified that he went with the victim to the clubhouse at around 1:00 a.m. (App. 112.)  Belcher testified that three men followed him and the victim outside, and although he could identify two of the men, he could not identify the third as the petitioner.

In this case, the victim and his friends changed their stories after their initial police report. Trial counsel testified that she believed the crime scene was not properly secured or investigated.   (App. 463; 477.)    Additionally, trial counsel cross-examined the eyewitnesses about the lighting and what they were able to see. (App. 92.) An expert on

10

identification testimony may have reinforced the belief that eyewitness testimony can be unreliable, but the likelihood of mistaken identification was brought to the jury's full attention through cross-examination and further the trial judge gave the standard jury charge on eyewitness identification. (App. 291-292; 346-348.)

Thus, the undersigned cannot conclude that, but for the lack of an expert on eyewitness identification, the result of the trial would have been different. Further, the undersigned is also reluctant to find trial counsel's decision not to call an expert on identification testimony an error as trial counsel could reasonably have concluded that the discrepancies among the eyewitnesses and the unreliability of the eyewitness testimony were sufficiently addressed. The petitioner has neither overcome the strong presumption that the conduct of counsel fell "within a wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689, nor shown that any deficiencies in counsel's performance prejudiced his defense, *id.* at 692-94. Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of *Strickland.* Thus, this ground is without merit.

**Ground Two**

In Ground Two, the petitioner contends that he was denied a fair trial based upon Juror Martin's affidavit. The PCR Court found trial counsel was not deficient in her handling of the juror complaint. (App. 497.) Further, the PCR Court found that the juror's letter and affidavit were not admissible and thus could not support a grant of PCR. (*Id*.) Citing Rule 606(b), the PCR Court found that Juror Martin's affidavit directly dealt with the jury's deliberations and not with extraneous information or outside influences. (*Id.*) Thus, under Rule 606(b), the PCR Court held it was not admissible and the petitioner had failed to prove this allegation. (App. 497.)

Rule 606(b) allows a juror to offer testimony as to "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." The rule additionally provides:

> [A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, . . . [n]or may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Rule 606(b), SCRE. "Rule 606 thus draws a distinction between evidence of external influences on the jury's deliberations and comments of jurors occurring during deliberations. While the rule allows evidence of the former to be introduced, it prohibits the introduction of the latter." *Shumpert v. State*, 661 S.E.2d 369, 371 (S.C. 2008).

In *State v. Hunter*, the South Carolina Supreme Court held that juror testimony involving internal misconduct may be received only when necessary to ensure fundamental fairness. 463 S.E.2d 314, 316 (1995). *Hunter* involved allegations by a juror that the verdict was tainted by racial prejudice. However, the affidavit in this case does not meet the standards that precedent has set for the seriousness of allegations that juror testimony must raise before it may be admitted. *Shumpert*, 661 S.E.2d at 372. Most of the cases which have allowed such affidavits contain an internal influence of a coercive nature (i.e. racial prejudice or gender bias). *State v. Pittman,* 647 S.E.2d 144, 158 (S.C. 2007). Here, however, while Juror Martin stated that he felt coerced into voting guilty, no testimony was presented to actually show coercive behavior. *Id.* In fact, Juror Martin stated he voted to convict the petitioner after the *Allen* charge and because he believed that the trial judge did not like it when the jury was hung. (Supp. App. 36-38.) Thus, if he was coerced, it appears he was actually coerced by the trial court's *Allen* charge and not by another juror.

Additionally, here, the jury was polled after the verdict was read and when given the opportunity to express his or her decision in the matter, each juror indicated that the verdict was his or her verdict and that it was still his or her verdict. (App. 385.) A juror's affirmative response to polling cures any doubt regarding whether that juror assented to the verdict. *See State v. Stone*, 465 S.E.2d 576, 578 (S.C. Ct. App. 1995) (holding a juror's unambiguous and unequivocal response of guilty when polled cured any doubt regarding whether she assented to the verdict and cleared up any confusion that may have made her reluctant to go along with the verdict at first); *see also State v. Pittman,* 2005 WL 1147691 (S.C. 2005)(unpublished). Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the respondent's Motion for Summary Judgment (Dkt. # 19) be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

                                                s/Bruce Howe Hendricks
                                                United States Magistrate Judge

December 16, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).